UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>MARIE ELIZABETH CASAS,<br><br>　　　　　　　　　　Defendant. | Case No.: 3:10-cr-3045-BTM<br><br>**ORDER DENYING WITHOUT PREJUDICE MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF No. 95]** |

　　　Defendant Marie Elizabeth Casas is serving her 189 month sentence at Federal Medical Center Carswell ("FMC Carswell") for violations of 18 U.S.C. § 1951(a) (interference with commerce by threats or violence) and 18 U.S.C. § 924(c)(1)(A)(ii) (brandishing a firearm during and in relation to any crime of violence).  The Court previously denied without prejudice Casas' motion to reduce her sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  (ECF No. 94.)  Casas now renews her motion.  (ECF No. 95 ("Mot.").)  The Court **DENIES WITHOUT PREJUDICE** Casas' renewed motion for the reasons below.

## I. BACKGROUND

　　　On March 1, 2011, Casas pled guilty to two counts of robbery or attempted robbery affecting commerce, in violation of 18 U.S.C. § 1951(a), and one count of brandishing a firearm during and in relation to a crime of violence, in violation of

1  18 U.S.C. § 924(c)(1)(A)(ii), which the Court accepted. (ECF Nos. 26, 28, 30.)
2  She was sentenced to 189 months in Bureau of Prison ("BOP") custody. (ECF No.
3  42.) To date, Casas has served approximately 136 months of her sentence. She
4  is scheduled to be released on December 26, 2023.

5      Casas received her first dose of the Pfizer COVID-19 vaccine on December
6  19, 2020, her second dose on January 5, 2021, and her third dose, or booster shot,
7  on September 22, 2021. (ECF No. 82, Exh. 5; ECF No. 114.)

8      Casas argues that, notwithstanding her vaccinated status, she remains at
9  risk of severe illness or death from COVID-19, because she is
10 immunocompromised and has several underlying medical conditions. (Mot. at 10-
11 13.) Casas also argues that she is unable to participate in a Residential Drug
12 Abuse Program ("RDAP") while in custody. (Mot. at 13-16.) The Government
13 opposes Casas' Motion, arguing that Casas does not have extraordinary and
14 compelling reasons to reduce her sentence. (ECF No. 102 ("Gov. Opp.").) The
15 Court held a hearing on Casas' Motion on August 25, 2021. (ECF No. 107.)

## II.  LEGAL STANDARD

17 As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) provides that:

> [T]he court, upon motion of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
> (i) extraordinary and compelling reasons warrant such a reduction
> ...
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The Ninth Circuit has held "the Sentencing Commission has not yet issued

a policy statement 'applicable' to 3582(c)(1)(A) motions filed by a defendant" and "the Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court . . . [but] are not binding." *United States v. Aruda,* 993 F.3d 797, 802 (9th Cir. 2021).

### III.  DISCUSSION

#### A. Exhaustion

Casas filed a new request for compassionate release with the Warden of FMC Carswell on May 7, 2021. (Mot., Exh. A.) Because thirty days have lapsed since Casas initiated the administrative remedy process, she has satisfied the exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A).

#### B. Extraordinary and Compelling Reasons

Casas argues that she meets the threshold requirement of extraordinary and compelling reasons to merit compassionate release because: (1) she remains at risk of severe illness or death from COVID-19, due to several underlying medical conditions and her immunocompromised status; and (2) she is unable to participate in a RDAP program while in custody. (Mot.)

##### i. COVID-19 Risks

In her first motion for compassionate release, Casas claimed that she suffered from multiple underlying medical conditions that increased her risk of severe illness or death from COVID-19, including severe obesity, Type 2 diabetes, chronic angina, malignant hypertension, rheumatoid arthritis, asthma, posttraumatic stress disorder, and a depressive disorder. (ECF No. 75.) On September 16, 2020, after a clinical encounter with Casas by Dr. Beatriz Parra, Dr. Parra wrote in an Administrative Note, under the section "Provisional Diagnosis," that Casas had a "[h]igh risk of mortality if [she] contract[ed] COVID-19." (ECF No. 75, Exh. C, at 29.)

Casas subsequently received her first dose of the Pfizer COVID-19 vaccine on December 19, 2020, her second dose on January 5, 2021, and her third dose,

or booster shot, on September 22, 2021. (ECF No. 82, Exh. 5; ECF No. 114.) According to the Center for Disease Control and Prevention ("CDC"):

> COVID-19 vaccination reduces the risk of COVID-19 and its potentially severe complications. All COVID-19 vaccines currently authorized for use in the United States helped protect people against COVID-19, including severe illness, in clinical trial settings. So far, studies that have looked at how COVID-19 vaccines work in real-world conditions (vaccine effectiveness studies) have shown that these vaccines are working well. . . . While COVID-19 vaccines are working well, some people who are fully vaccinated against COVID-19 will still get sick, because no vaccines are 100% effective. These are called vaccine breakthrough cases. However, data suggest that vaccination may make symptoms less severe in people who are vaccinated but still get COVID-19. mRNA COVID-19 vaccines have been shown to provide protection against severe illness and hospitalization among people of all ages eligible to receive them.

CDC, *COVID-19 Vaccines Work*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited November 10, 2021).

In her renewed motion for compassionate release, Casas focuses on her immunocompromised status and the risk that she may not be reliably protected by the vaccine. (Mot. at 10.) Casas submits the declaration of Dr. Tara Vijayan, who reviewed Casas' medical records from the BOP. (Mot., Exh. B.) According to Dr. Vijayan:

> Ms. Casas is immunocompromised. She has rheumatoid arthritis, which means that her body mounts an inappropriate immune response to her own cells and tissues, specifically her joints. This results in a chronic inflammation that can cause joint destruction. . . . To counter this inflammation, she takes immunosuppressive medication. Leflunomide is an antimetabolite that decreases the production of immune cells, and her decreased number of immune cells renders her unable to mount an appropriate immune response to infections, including viruses such as SARS-CoV-2. Medications like leflunomide also result in a decreased host response to immunizations. Thus, because Ms. Casas is immunocompromised due to her taking leflunomide, she remains at risk for infection and subsequent severe illness or death from COVID-19, even though she has been fully

vaccinated with the Pfizer vaccine.

*Id.* According to the CDC:

> Immunocompromised people have lower vaccine effectiveness compared to non-immunocompromised people (59-72% vs. 90-94%, respectively). Immunocompromised people are also more likely to have serious breakthrough infections, with 40-44% of hospitalized breakthrough cases occurring among immunocompromised people.

CDC, *ACIP Evidence to Recommendations for Use of an Additional COVID-19 Vaccine Dose in Immunocompromised People*, https://www.cdc.gov/vaccines/acip/recs/grade/covid-19-immunocompromised-etr.html (last accessed November 10, 2021). In addition, the CDC states that:

> People who are moderately to severely immunocompromised make up about 3% of the adult population and are especially vulnerable to COVID-19 because they are more at risk of serious, prolonged illness. Studies have found that some immunocompromised people don't always build the same level of immunity after vaccination the way non-immunocompromised people do and may benefit from an additional dose to ensure adequate protection against COVID-19. Smaller studies found fully vaccinated immunocompromised people made up a large proportion of hospitalized "breakthrough cases," suggesting immunocompromised people are more likely to transmit the virus to household contacts. An additional dose may prevent serious and possibly life-threatening COVID-19 in people who may not have responded to their initial vaccine series. In ongoing clinical trials, the mRNA COVID-19 vaccines (Pfizer-BioNTech or Moderna) have been shown to prevent COVID-19 following the two-dose series. Limited information suggests that immunocompromised people who have low or no protection after two doses of mRNA vaccines may have an improved response after an additional dose of the same vaccine.

CDC, *COVID-19 Vaccines for Moderately to Severely Immunocompromised People*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/immuno.html (last accessed November 10, 2021). The CDC also states that:

> Moderately and severely immunocompromised people may not mount a protective immune response after initial vaccination and,

furthermore, their protection by primary vaccination may wane over time making them susceptible to severe COVID-19. ACIP and CDC have made age-specific recommendations for an additional primary dose and a booster dose for this population. . . . Moderate and severe immunocompromising conditions and treatments include but are not limited to:

- Active treatment for solid tumor and hematologic malignancies
- Receipt of solid-organ transplant and taking immunosuppressive therapy
- Receipt of CAR-T-cell therapy or hematopoietic cell transplant (HCT) (within 2 years of transplantation or taking immunosuppression therapy)
- Moderate or severe primary immunodeficiency (e.g., DiGeorge syndrome, Wiskott-Aldrich syndrome)
- Advanced or untreated HIV infection (people with HIV and CD4 cell counts <200/mm3, history of an AIDS-defining illness without immune reconstitution, or clinical manifestations of symptomatic HIV)
- Active treatment with high-dose corticosteroids (i.e., ≥20 mg prednisone or equivalent per day when administered for ≥2 weeks), alkylating agents, antimetabolites, transplant-related immunosuppressive drugs, cancer chemotherapeutic agents classified as severely immunosuppressive, tumor necrosis factor (TNF) blockers, and other biologic agents that are immunosuppressive or immunomodulatory.

Factors to consider in assessing the general level of immune competence in a patient include disease severity, duration, clinical stability, complications, comorbidities, and any potentially immune-suppressing treatment.

CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States*, https://www.cdc.gov/vaccines/covid-19/clinical-considerations/covid-19-vaccines-us.html#considerations-covid19-vax-immunocopromised (last accessed November 10, 2021).

The Government argues that it is "unclear" that Casas meets the CDC's criteria for immunocompromised status, because "Dr. Vijayan states that Defendant is immunocompromised due to her rheumatoid arthritis and her taking

of the medication Leflunomide" but "does not state that this meets the criteria laid out by the CDC as immunocompromised for purposes of determining whether the COVID-19 vaccine is effective." (ECF No. 109 ("Gov. Supplemental Brief") at 5-6.)  The Government also argues that "even assuming Defendant is immunocompromised, the vaccine effectiveness for Pfizer 7-27 days after the second dose is 71% (CI 37-87%) among immunocompromised people in terms of preventing a COVID infection" and "[t]he vaccine effectiveness for Pfizer 7-27 days after the second dose is 75% (CI 44-88%) among immunocompromised people in terms of preventing a symptomatic COVID infection." (*Id.* at 6; Ex. 2.)  In response, Casas submits a second declaration from Dr. Vijayan, who states that Casas "fits into these CDC categories of someone who is immunocompromised because she is receiving 'treatment with immunosuppressive medication.'" (ECF No. 113.)  Dr. Vijayan also states that:

> it would not be correct to say that vaccine effectiveness of the mRNA vaccines for immunocompromised people is 71 to 75%.  For some immunocompromised people, the mRNA vaccines are nearly as effective as they are for people who are not immunocompromised.  For other immunocompromised people, however, they are far less effective to the point of being not effective.  Some immunocompromised people will have virtually no response to vaccination for COVID-19 with the mRNA vaccines.  In other words, some immunocompromised people will receive almost no protection from having been vaccinated.  One should also note that these data measured vaccine effectiveness relatively close in time to the second shot, and waning of immunity may occur. . . . In terms of a booster shot for immunocompromised people, there are some emerging data that indicates that a third dose initiates an antibody response in some immunocompromised people who did not have a sufficient antibody response to the two-dose series. . . . I agree that immunocompromised people who did not respond to the two-dose series may benefit from a third shot. However, there is no way to know if they will benefit from a third shot, and one should not assume that they will benefit from a third shot, considering that 50-67% of the people who did not respond to the two-dose series were found not to have a response to a third dose as well.

*Id.*

As of November 10, 2021, at FMC Carswell, the number of inmates and staff who have currently tested positive for COVID-19 is 0 and 13, respectively. BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last accessed November 10, 2021). The number of inmates and staff who have received full vaccinations is 1451 and 363, respectively. *Id.* The number of inmate and staff deaths from COVID-19 is 8 and 0, respectively. *Id.* The number of inmates and staff who have recovered from COVID-19 is 597 and 4, respectively. *Id.* FMC Carswell is currently at a Level 3 Modified Operational Level, which includes facility-wide use of face coverings, surgical or N95 masks, social distancing in all areas, and daily COVID-19 symptom screens and temperature checks prior to entry into the institution. *Id.*; BOP, *BOP COVID-19 Operational Levels*, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp.

On the current record, the Court cannot conclude with any reasonable degree of confidence what Casas' risk of contracting COVID-19 is, or her risk of severe illness or death if she were to contract COVID-19. Casas has now received three doses of the Pfizer COVID-19 vaccine, in accordance with current CDC recommendations for moderately to severely immunocompromised individuals. Casas takes immunosuppressive medication and there is evidence that the vaccines' efficacy may be reduced to varying degrees for some immunocompromised individuals. It is unclear to the Court the severity or degree of Casas' immunocompromised status, how likely the particulars of her immunocompromised status reduce the efficacy of the Pfizer COVID-19 vaccines she has received, and the degree of any reduced efficacy. For example, while Dr. Vijayan states in her declarations that Casas is immunocompromised, she does not state that Casas is moderately or severely immunocompromised under CDC guidelines. (*See* Mot., Exh. B; ECF No. 113.) Further Dr. Vijayan states that "for some immunocompromised people, the mRNA vaccines are nearly as effective as

8

3:10-cr-3045-BTM

they are for people who are not immunocompromised" while "[f]or other immunocompromised people . . . they are far less effective to the point of being not effective," without stating which group Casas is more likely to fall into. (ECF No. 113.)  On the current record, the Court finds it too speculative to conclude that the vaccines Casas has received are not effective in either preventing the contraction of COVID-19, or preventing severe illness or death if she were to contract COVID-19.  Casas has submitted a BOP press release reporting the recent September 29, 2021 death of FMC Carswell inmate Tammy J. Lamere, "who had long-term, pre-existing medical conditions, which the [CDC] lists as risk factors for developing more severe COVID-19 disease."  (ECF No. 115-1.)  However, it is unclear to the Court whether Ms. Lamere and Casas' situations are comparable in terms of category and severity of underlying medical conditions, immunocompromised status, and vaccination status.  The Court recognizes that data regarding the efficacy of the vaccines in immunocompromised individuals is limited and evolving.  However, the Court is currently not satisfied that the COVID-19 risk to Casas constitutes an extraordinary and compelling circumstance meriting release.

### ii.   Access to RDAP

Casas argues that she "is in need of residential drug treatment," but "the opportunity for [her] to participate in intensive, residential dug treatment while serving her sentence in the BOP (in RDAP) has not been and will never be provided" because "[t]he BOP records make clear that [she] was deemed unqualified for RDAP." (Mot. at 13.)  The Court does not find that Casas' inability to participate in a RDAP program while in custody constitutes an extraordinary and compelling reason meriting release.  *See United States v. Moore*, 2021 WL 2417722, at *3 (D. Idaho June 11, 2021) ("[defendant] also argues that her inability to participate in Court-recommended RDAP produces an extraordinary and compelling reason for compassionate release. . . . Although unfortunate, especially

in light of her need and sincere desire for treatment, this alone does not produce an extraordinary or compelling reason to reduce or otherwise modify [defendant's] sentence. As such, [defendant] has not met her burden of demonstrating extraordinary and compelling reasons for her release, notwithstanding the Court's desire that she obtain treatment. [Defendant] can always do substance abuse treatment as a term and condition of supervised release once she is released from prison."); *United States v. Empey*, 2021 WL 982616, at *2 (D. Idaho Mar. 15, 2021) ("[Defendant] also suggests that he is not able to participate in RDAP, due to the firearm enhancement listed in his PSR. But BOP has discretion to determine who may participate in RDAP and the Court has no authority to alter [defendant's] sentence because BOP determined he does not qualify for RDAP. . . . [This is not an] extraordinary and compelling reason warranting release.").

### C. 18 U.S.C. § 3553 Sentencing Factors

Because Casas has not provided extraordinary and compelling reasons meriting release, the Court need not reach the § 3553 sentencing factors.

### IV.  CONCLUSION

The motion for release under § 3582(c) is **DENIED WITHOUT PREJUDICE**. The Court recognizes that the COVID-19 situation continues to evolve. Casas may renew her motion if her circumstances change, or new data or evidence emerges.

**IT IS SO ORDERED**.

Dated: November 16, 2021

_____
Honorable Barry Ted Moskowitz
United States District Judge